IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JEFF GOFF                                                             PLAINTIFF/
                                                      COUNTER-DEFENDANT

v.                                NO. 6:19-CV-06130

ARTHUR J. GALLAGHER & CO.                                           DEFENDANT/
                                                      COUNTER-PLAINTIFF

## MEMORANDUM OPINION AND ORDER

### I.      INTRODUCTION

Plaintiff and counter-defendant Jeff Goff initiated this action for declaratory relief in

Garland County Circuit Court, seeking to invalidate a noncompetition covenant restricting his

ability to compete with Defendant and counter-plaintiff Arthur J. Gallagher & Company

("Gallagher" or the "Company").[1]  Gallagher responded by removing the suit to this Court and

by filing its own claims for damages and injunctive relief.  Before the Court is a motion for

summary judgment filed by Goff (ECF No. 13) wherein Goff requests the Court to invalidate the

noncompetition covenant.  Gallagher has filed a response in opposition (ECF No. 19), and Goff

has filed a reply.  (ECF No. 23).  The motion is ready for consideration.  For the reasons that

follow, Goff's motion for summary judgment will be DENIED.

### II.     BACKGROUND

Plaintiff Jeff Goff was an equity owner in an Arkansas-based insurance brokerage firm

known as Hagan Newkirk Financial Services, Inc.  ("Hagan Newkirk").  Goff served within

Hagan Newkirk as an officer, director, and key employee.  Defendant Gallagher is an

international insurance brokerage and risk management services firm.  On April 28, 2016, Goff

---

[1] There are no issues of material fact or jury questions with regard to Goff's claims for relief.

entered into an asset sale transaction (the "Transaction") with Gallagher and its subsidiaries,

divisions and affiliated and related companies (collectively, the "Company") wherein Gallagher

acquired a material portion of the goodwill, customer relationships, and other assets of Hagan

Newkirk.  Under the terms of the Asset Purchase Agreement, Goff received substantial monetary

compensation in consideration for his share of the material assets and goodwill of Hagan

Newkirk.

The Transaction also consisted of a separate, contemporaneous agreement (the

"Employment Agreement") wherein the Company hired Goff to work as a Senior Benefits

Consultant.  In this position, Goff had significant managerial and servicing responsibilities for

national accounts throughout the United States.  Goff's compensation package included a

generous salary plus opportunities for performance-based bonuses, and the Company agreed to

allow Goff to retain limited duties with Hagan Newkirk during his employment provided they

did not detract from his obligations to the Company.  For example, Goff could refer certain

clients to Hagan Newkirk upon the Company's permission.  (ECF No. 19-2, Employment

Agreement at 2).

Goff's duties were well defined and consisted of rendering Insurance and Benefits

Services on behalf of the Company and its subsidiaries.  The Employment Agreement defined

"Insurance Services" to include:

> [T]ransferring, placing, marketing, accepting, aiding, counseling or consulting in
> the placement, renewal, discontinuance or replacement of any insurance (including
> self-insurance) by, or handling self-insurance programs, insurance claims, risk
> management services or other insurance administrative or service functions.

(*Id*. at 2-3).  The Employment Agreement defined "Benefit Services" as:

> [P]roviding employee benefit brokerage, consulting, or administration services, in
> the area of group insurance, defined benefit and defined contribution pension plans,
> individual life, disability, and capital accumulation products; investment advisory

services, wealth management, or group retirement services; defined benefit and defined contribution pension services; human resource consulting services, including without limitation, compensation consulting, compensation program design, compensation and benefits surveys, and human resources management; and all other employee benefit or human resource areas in which the Company is involved.

(*Id*. at 3).

By virtue of his employment with the Company, Goff acquired access to the Company's confidential and proprietary information (the "Confidential Information"), including but not limited to marketing programs, procedures and techniques, products and services, business and management strategies, criteria and formulae for pricing, claims management, "the structure and pricing of special insurance packages that the Company has negotiated with various underwriters; [and] highly sensitive information about the Company's agreements and relationships with certain underwriters." (*Id*. at 3). When he signed the Employment Agreement, Goff acknowledged the Confidential Information constituted valuable Company property, "developed over a long period of time and at substantial expense"; that the Confidential Information was not generally known by the Company's competitors; and that it was provided only to those employees who needed to access the information to perform their job functions. (*Id*. at 3-4). Goff agreed not to divulge the Confidential Information.

Goff's access to the information extended to certain Company accounts, proprietary insurance and risk management programs, and data and materials acquired from Hagan Newkirk. (*Id*. at 4). The Company provided access so that Goff could use the information to solicit, produce, manage, and service Company accounts and maintain and develop business relationships on the Company's behalf. (*Id*.). The Employment Agreement emphasized the accounts serviced by Goff belonged to Company:

> Moreover, although [Goff] acknowledges and understands that certain of the Company's accounts may develop an identification with [Goff] rather than the Company itself, all such accounts shall at all times be Company accounts for all purposes and [Goff] disclaims any interest in any such Company accounts.

(*Id*. at 4-5).

Section 8 of the Employment Agreement contemplates Goff's post-employment activities and includes three separate clauses containing covenants not to compete.  The covenants were designed to protect Company interests, including Confidential Information, relationships with existing accounts, existing goodwill of the Company, and the goodwill and other assets purchased from Hagan Newkirk.  (*Id*.).  The parties acknowledged that access to the Confidential Information would not have been given to Goff but for the inclusion of the restrictive covenants in the Employment Agreement.  (*Id*. at 13).  Goff's challenge is limited to the non-compete clause set out in Section 8.A.(1) of the Employment Agreement.

The clause restricts Goff from engaging in a broad range of activities within a specified geographical area for a period of five years beginning the effective date of the sale of Goff's interest in Hagan Newkirk.  Section 8.A(1) states:

> For a period of five years after the Closing Date (as defined in the Asset Purchase Agreement) the Employee will not, directly or indirectly, compete in any way with [Hagan Newkirk] anywhere within a 25-mile radius of the location of any client, customer or Prospective Account of [Hagan Newkirk]. For the purposes of this Section 8.A(1), the term "compete in any way with the Acquired Business" shall mean engaging in or attempting to engage in any business similar to that carried on by the Acquired Business or by the Company or any of its affiliates.

(*Id*. at 14) (emphasis in original).[2]  With regard to the range of prohibited activities, the covenant bars Goff from competing in the numerous fields in which Gallagher has a

---

[2] The term "Prospective Account" is defined to include:

> [A]ny entity (other than a then-current account of the Company but including former Company accounts) with respect to whom, at any time during the one-year period preceding the termination of [Goff's] employment with the Company, [Goff]:  (I) submitted or assisted in the submission of a

business presence.   For example, Gallagher provides insurance and risk management services in fields ranging from aviation, construction, energy, entertainment, equity and mergers, financial institutions, and healthcare.   Some of the services provided by Gallagher within these industries include compliance consulting, executive benefits consulting, human resources and compensation consulting, retirement plan consulting, investment and fiduciary consulting, and voluntary benefits consulting.   (ECF No. 14, Pl.'s Br. at 1-2). According to Goff, "[t]he plain meaning of this [clause] is Plaintiff cannot work in any of the industries Defendant works in."   (ECF No. 14, Pl.'s Br. at 5).

Goff's employment with the Company lasted for a little more than three years.   On September 6, 2019, Goff resigned from his position.   It is undisputed that during the days before his resignation, Goff emailed himself plan design information, quotes, and a prospect list.   On the day of his resignation, Goff emailed himself two attachments containing his entire contact list.   On September 27, 2019, the Company's in-house counsel sent a letter to Goff, explaining the application of the competition limitations in the Employment Agreement.   The letter stated:

(1) Through April 28, 2021, you may not compete in any way with Gallagher within a certain geographic area (which is defined in the [Employment] Agreement);

(2) Through September 6, 2021, you may not, directly or indirectly, provide insurance-related or benefit-related services to any account of Hagan Newkirk Financial Services, Inc. ("HNFS") or any account which was an account of HNFS within two years prior to the April 28, 2016 closing date, or to any prospective account of HNFS;

(3) Through September 6, 2021, you may not, directly or indirectly, provide insurance-related or benefit-related services to any Gallagher client with whom you worked or any prospective account which you actively solicited.

---

presentation or proposal of any kind on behalf of the Company, (II) had material contact or acquired Confidential Information as a result of or in connection with [Goff's] employment with the Company, or (III) incurred travel and/or entertainment expenses which were reimbursed by the Company to [Goff].

(ECF No. 12, Letter from Gallagher to Goff).

The Company has filed claims against Goff for damages and injunctive relief. Meanwhile, Goff has moved for summary judgment (ECF No. 13), contending the noncompetition covenant in Section 8.A(1) should be invalidated.  Goff argues the covenant is overbroad.  The Company argues the covenant is reasonable and narrowly tailored to protect its business interests.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the initial burden of showing there are no triable issues of fact.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 252 (1986).  When an issue is primarily a question of law, rather than a question of fact, the case is "particularly appropriate for summary judgment."  *TeamBank, N.A. v. McClure*, 279 F.3d 614, 617 (8th Cir. 2002) (citing *Adams v. Boy Scouts of America-Chickasaw Council*, 271 F.3d 769, 775 (8th Cir. 2001)); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Shirley*, 96 F.3d 1108, 1111 (8th Cir. 1996).

### IV.    DISCUSSION

Jurisdiction is proper under 28 U.S.C. § 1332(a).  Goff is a citizen of Arkansas, Gallagher is a Delaware corporation with its principal place of business in Illinois, and the amount in controversy exceeds $75,000.  *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").  The Employment Agreement is governed by Arkansas law.  Section 11.B states the Employment Agreement shall be governed by and construed under the laws of the State in which the

employee resides, without giving effect to conflict of law principles.  The parties plead that Goff

is a resident of Garland County, Arkansas.  They do not plead he was a resident of another State

when he signed the Employment Agreement.  Because the covenants contained within the

Employment Agreement arose from the sale of a business, i.e., Hagan Newkirk, common law

standards apply in determining their enforceability.  *See* Ark. Code Ann. § 4-75-101(h)(1)-(2).

The Court must view the Employment Agreement in its entirety and must give effect to

the intent of the parties by looking at the agreement as a whole.  *Sensabaugh v. Farmers Ins.*

*Exch.*, 420 F. Supp. 2d 980, 985 (E.D. Ark. 2006); *Miller v. Dyer*, 243 Ark. 981, 986, 423

S.W.2d 275, 278 (1968).  The party challenging a noncompetition covenant must show its

enforcement is unreasonable.  *Dawson v. Temps. Plus*, *Inc.*, 337 Ark. 247, 254, 987 S.W.2d 722,

726 (1999).  The validity of a noncompetition covenant is determined by the factual

circumstances of each case.  *HRR Ark., Inc. v. River City Contractors, Inc.*, 350 Ark. 420, 430,

87 S.W.3d 232, 239 (2002).  A valid covenant not to compete must satisfy three requirements:

(1) the employer must have a valid interest to protect; (2) the geographical restriction must not be

overly broad; and (3) a reasonable time limit must be imposed.  *Advanced Envtl. Recycling*

*Techs., Inc. v. Advanced Control Sols., Inc.*, 372 Ark. 286, 297, 275 S.W.3d 162, 172 (2008).  In

determining the validity of a noncompetition covenant, the restraint imposed upon one party

must not be greater than what is reasonably necessary to protect the other party.  *Federated Mut.*

*Ins. Co. v. Bennett*, 36 Ark. App. 99, 101-02, 818 S.W.2d 596, 598 (1991); *Evans Laboratories,*

*Inc. v. Melder*, 262 Ark. 868, 870, 562 S.W.2d 62, 64 (1978).

Noncompetition covenants in employment contracts are viewed with less favor than those

connected to the sale of a business.  *Hyde v. C.M. Vending Co.*, 288 Ark. 218, 222-23, 703

S.W.2d 862, 864 (1986).  Public policy favors competition and will not allow someone to buy off

7

potential rivals while also restricting an individual's "right to earn a living at his chosen calling."

*Dawson*, 337 Ark. 254, 987 S.W.2d at 727; *Am. Excelsior Laundry Co. v. Derrisseaux*, 204 Ark.

843, 165 S.W.2d 598, 600 (1942).  However, noncompetition covenants connected to the sale of

a business are viewed with less concern by Arkansas courts and remain valid to the extent

reasonably necessary for the protection of the purchaser.  *See Freeman v. Brown Hiller, Inc.*, 102

Ark. App. 76, 81, 281 S.W.3d 749, 754 (2008); *Sensabaugh*, 420 F. Supp. 2d at 985.  Unlike the

typical employment contract, the sale of a business "may involve comprehensive negotiations,

bargaining partners of equal stature, and a truly arm's-length transaction."  Howard W. Brill &

Christian H. Brill, *Arkansas Law of Damages*, 1 Arkansas Law of Damages § 17:9 (6th ed.).

Furthermore, the sale of a business often consists of transferring intangible assets, such as

customer goodwill.  In the circumstances where goodwill is transferred during the sale of a

business, the purchaser has a "legitimate pecuniary interest" in protecting himself from "being

drained by competition from the seller."  *Duffner v. Alberty*, 19 Ark. App. 137, 142, 718 S.W.2d

111, 114 (1986).

In the present case, Goff challenges the enforceability of the noncompetition covenant in

Section 8.A(1) of the Employment Agreement.  As the party challenging the covenant not to

compete, Goff has the burden to show the covenant is unreasonable and contrary to public

policy.  *See Moore v. Midwest Distribution, Inc.*, 76 Ark. App. 397, 401, 65 S.W.3d 490, 493

(2002).  In arguing the covenant is unreasonable and overbroad, Goff contends the restriction is

not sufficiently tailored to protect Gallagher's interests.  (*See* ECF No. 14, Pl.'s Br. at 4-5).  To

make this argument, Goff relies on *Federated Mut. Ins. Co. v. Bennett*, 36 Ark. App. 99, 818

S.W.2d 596 (1991).  There, the party opposing enforcement of a covenant not to compete did not

have an interest in preventing a former employee from selling lines of insurance not offered by

the employer.  *Id*. at 101, 818 S.W.2d at 598.  In contrast, the covenants in the Employment

Agreement are designed to protect these interests: (1) Gallagher's interest in preventing the

confusion and misappropriation of the accounts, customers and business relationships acquired

from Goff and Hagan Newkirk; and (2) Gallagher's interest in preventing Goff's post-

employment use of Confidential Information.

Furthermore, the covenants in *Federated* arose solely from the employment context,

whereas, here the covenants are connected to Gallagher's acquisition of Hagan Newkirk.

Although Goff's covenants are contained in the Employment Agreement, it should be noted the

Employment Agreement was executed contemporaneous with the Asset Purchase Agreement.

These agreements comprised a singular transaction resulting from comprehensive negotiations.

This is not a situation where the covenants should be viewed solely in the context of Goff's

employment with Gallagher.  Goff received substantial financial benefits in exchange for selling

a material portion of Hagan Newkirk's goodwill and assets, in addition to receiving the future

benefits associated with being employed to maintain client relationships on behalf of the

Company.

The covenant challenged by Goff seeks to prevent unfair competition in the business

areas in which Gallagher has a business presence.  The restriction is tailored to prevent

competition for certain clients and prospective accounts of Hagan Newkirk, i.e., those acquired

by Gallagher pursuant to the Asset Purchase Agreement.  Such a restriction is reasonable when

considering that Gallagher retained Goff as an employee after Gallagher purchased Hagan

Newkirk.  *Compare Girard v. Rebsamen Ins. Co.*, 14 Ark. App. 154, 159, 685 S.W.2d 526, 528

(1985) (covenant reasonable when it prohibited former employee and seller of business from

competing for the accounts serviced by the employee at the time of termination), *with Rebsamen*

*Ins. v. Milton*, 269 Ark. App. 737, 600 S.W.2d 441 (1980) (covenant unenforceable when it prohibited competition with *any* customer or account of the employer) (emphasis added).

Prior to the execution of the Asset Purchase Agreement, Goff and Hagan Newkirk possessed business relationships with the off-limits accounts.  Indeed, Gallagher purchased Hagan Newkirk with the expectation it would acquire the goodwill associated with these accounts.  During Goff's employment, Gallagher provided Goff with resources, training, and Confidential Information to service these accounts on Gallagher's behalf.  In his position as a former owner of Hagan Newkirk and a former employee of Gallagher, Goff's post-employment activities present a situation where he can unfairly drain competition away from Gallagher.  Goff has failed to present evidence suggesting the covenant is broader than necessary to protect against this concern.  *See Moore*, 76 Ark. App. at 401, 65 S.W.3d at 493 (party challenging covenant not to compete has the burden to show its enforcement is unreasonable).  Accordingly, the Court finds the provision is reasonable in scope.

As for the geographic reach of the covenant, the covenant applies anywhere within a twenty-five mile radius of the location of any client, customer or Prospective Account of Hagan Newkirk.  This restriction is reasonable because it is tailored to Hagan Newkirk's relevant trade area and protects the market and customers the Company purchased from Goff.  *Jaraki v. Cardiology Assocs. of Ne. Arkansas, P.A.*, 75 Ark. App. 198, 207, 55 S.W.3d 799, 804 (2001) (employer's trade area must be considered in determining whether the geographic restriction is overly broad); *All-State Supply v. Fisher*, 252 Ark. 962, 483 S.W.2d 210 (1972) (statewide restriction upheld when employer and employee conducted business on a statewide basis).

The provision in question is also reasonable regarding its duration.  While the range of prohibited competitive activities is broad and five years may seem like a long time, the provision

is designed to protect the Company from unfair competition from Goff.   For years, Goff

personally invested his own time, money, and talent in building name recognition and making

Hagan Newkirk a prestigious and successful insurance brokerage firm.  Goff's hard work and

dedication were recognized by the Company, and he was paid a significant amount of money to

convey outright his share of Hagan Newkirk's goodwill and other assets.  The amount paid was

more than five times the annual base salary Goff received under the terms of the Employment

Agreement, and it was untied to any future performance.  Thus, the Court concludes that Goff

has failed to carry his burden of proof and show the noncompetition covenant in Section 8.A(1)

is unreasonable, invalid, and unenforceable.

## V.     ORDER

IT IS THEREFORE ORDERED that the Plaintiff's motion for summary

judgment (ECF No. 13) is DENIED.

IT IS SO ORDERED this 6th day of May, 2020.

/s/ Robert T. Dawson
**ROBERT T. DAWSON
SENIOR U.S. DISTRICT JUDGE**